NOT PRECEDENTIAL – NOT FOR PUBLICATION

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

COMMISSIONER OF THE DEPARTMENT OF PLANNING AND NATURAL RESOURCES, ROBERT S. MATHES, IN HIS CAPACITY AS TRUSTEE FOR NATURAL RESOURCES OF THE TERRITORY OF THE UNITED STATES VIRGIN ISLANDS,

Plaintiff,

v.

CENTURY ALUMINA COMPANY, VIRGIN ISLANDS ALUMINA COMPANY, ST. CROIX ALUMINA, L.L.C., LOCKHEED MARTIN CORPORATION, ALCOA WORLD ALUMINA, L.L.C., HOVENSA, L.L.C., HESS OIL VIRGIN ISLANDS CORPORATION, ST. CROIX RENAISSANCE GROUP, L.L.L.P.,

Defendants.

CIVIL NO. 2005/0062

---

UNITED STATES VIRGIN ISLANDS, DEPARTMENT OF PLANNING AND NATURAL RESOURCES,

Plaintiff,

v.

ST. CROIX RENAISSANCE GROUP, L.L.L.P.,

Defendant.

CIVIL NO. 2007/114

---

# MEMORANDUM OPINION

Finch, J.

THIS MATTER comes before the Court on the Joint Motion to Approve and Enter Agreement and Consent Decree. Such Consent Decree concerns two environmental actions relating to contamination allegedly emanating from the HOVENSA Refinery [hereinafter "the Refinery"] and the Alumina Facility sites in an area known as the South Coast Industrial Area of St. Croix, United States Virgin Islands. After reviewing the substantial written submissions in support of and in objection to the entering of the Consent Decree, the Court does not approve the Consent Decree.

## I. Natural Resource Damages and Response Cost Suits

In Civil No. 2005-62, the Commissioner of the Department of Planning and Natural Resources, Robert S. Mathes, in his capacity as Trustee for the Natural Resources of the Territory of the United States Virgin Islands [hereinafter "the Trustee"] brings federal claims against St. Croix Renaissance Group, L.L.L.P [hereinafter "Renaissance"], and seven other entities under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., as well as territorial common law and statutory claims. In Civil No. 2007-114, United States Virgin Islands Department of Planning and Natural Resources (DPNR), on behalf of the United States Virgin Islands, sues Renaissance alone to recover past and future response costs pursuant to CERCLA and for a declaratory judgment that Renaissance is jointly, severally, and strictly liable to DPNR for such costs.

**II. The Proposed Consent Decree and Responses Thereto**

In the proposed Consent Decree, Renaissance, current owner of the Alumina Facility, agrees with the Trustee and DPNR to make a payment of $300,000. Of this $300,000, $180,000 would be paid for damages and natural resources damages and $120,000 would go toward response costs, oversight costs, health assessment costs, attorney's fees and litigation costs. The Trustee and DPNR agree to release their present claims, as well as all future claims, except those reserved, against Renaissance as well as all subsequent transferees, for damages, natural resource damages, response costs, health assessment costs, attorney's fees and litigation costs. The Consent Decree would also provide Renaissance with protection from contribution claims under section 113(f)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(f)(2).

St. Croix Alumina, L.L.C. and ALCOA World Alumina, L.L.C. [hereinafter "SCA/ALCOA"] who are two of Renaissance's Codefendants in Civil No. 2005-62 and former owners of the Alumina Facility, oppose the Joint Motion as unfair, unreasonable and inconsistent with CERCLA's goals. SCA/ALCOA principal concerns are that the Consent Decree (1) does not contain any estimate of total damages or response costs to resolve potential claims associated with the Alumina Facility, or of Renaissance's fair share of such damages or costs; (2) gives Renaissance unlawfully broad protection from contribution claims; and (3) releases future owners of the Alumina Facility.

Century Alumina Company [hereinafter "Century"], together with Virgin Islands Alumina Company, and Lockheed Martin Corporation, three other Renaissance Codefendants, request that, if the Court approves the Consent Decree, the Court explicitly

confirm that the Consent Decree does not affect any contractual indemnification obligations between or among the Defendants and that those rights and obligations remain valid and enforceable pursuant to both territorial and federal law, including CERCLA. See, e.g., Washington v. United States, 2007 WL 3025843, at *9 (W.D. Wash. Oct. 15, 2007) (approving a Consent Decree upon condition that Consent Decree expressly permit other PRPs to bring any contractual indemnity claims). These three Codefendants also asks that the Court only approve the Consent Decree after explicitly stating that such approval in no way indicates acceptance of the methodology, factual findings, or conclusions of a report prepared in 2004 for DPNR which was submitted in support of the Consent Decree, and explicitly stating that any such methodologies, factual findings, or conclusions have no preclusive effect in the pending litigation on the non-settling parties, including Century, Virgin Islands Alumina Company and Lockheed Martin Corporation.

Renaissance Codefendants HOVENSA, LLC and Hess Oil Virgin Islands Corp. [collectively, hereinafter "the Refinery Defendants"], also request that the Court, if it approves the Consent Decree, explicitly acknowledge the right of all non-settling Defendants to challenge any of the factual findings or legal conclusions in subsequent proceedings in the pending litigation or in related litigation between the non-settling Defendants and the Trustee. The Refinery Defendants also agree with SCA/ALCOA's contention that the releases and covenants not to sue "subsequent transferees of the Alumina Facility" are unfair. They ask the Court to narrowly tailor the release and covenant not to sue provisions so that they are not applicable to "subsequent transferees."

In their Joint Reply to Responses to Joint Motion to Approve and Enter Agreement and

Consent Decree, the Trustee, DPNR, and Renaissance, propose that the Court, in its Order approving the Consent Decree, state "that the Consent Decree shall not change the contractual indemnifications entered into by any of the parties to these proceedings; and . . . that the Releases and Covenants Not to Sue contained . . . as to 'subsequent transferees' do not apply to future contaminant releases at the Alumina Facility."

SCA/ALCOA rejects this proposal on the grounds previously stated as well as that the clarification concerning the viability of pre-existing contractual obligations among the parties is unduly narrow, and that the Consent Decree is unfair and inconsistent with the purposes of CERCLA to the extent that it includes any release or covenant not to sue subsequent transferees; the proposed limited release does not cure such defect.

**III. The Role of the District Court**

The Court must undertake an independent assessment of the Consent Decree and determine whether its proponents have carried their burden of proving that "it is fair, reasonable, and consistent with CERCLA's goals." In re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 207 (3d Cir. 2003). "Fairness" in the context of an environmental consent decree has both procedural and substantive components. Id. To measure procedural fairness, the Court "look[s] to the negotiation process and attempt[s] to gauge its candor, openness and bargaining balance." Id. Procedural fairness requires arm's length negotiations between balanced parties. Id.

A Consent Decree is substantively fair if its terms "are based on comparative fault and apportion liability according to rational estimates of the harm each party has caused." Id. (quotation omitted). Settlement terms must roughly correlate with comparative fault so that

each party bears the costs of the harm for which it is legally responsible. See United States v. Cannons Engineering Corp., 899 F.2d 79, 87 (1st Cir. 1990). Although the Court need not "review the allocated shares with mathematical exactitude," United States v. Kramer, 19 F. Supp.2d 273, 281 (D.N.J. 1998), the measure of comparative fault on which the settlement terms are based cannot be "arbitrary, capricious, [or] devoid of a rational basis." Tutu Wells, 326 F.3d at 207 (quotation omitted).

"A district court's reasonableness inquiry, like that of fairness, is a pragmatic one, not requiring precise calculations." United States v. Charter Intern. Oil Co., 83 F.3d 510, 521 (1st Cir. 1996). In evaluating reasonableness, the Court's consideration is multifaceted. Cannons Engineering Corp., 899 F.2d at 89. The Court examines "the probable effectiveness of proposed remedial responses," "whether the settlement satisfactorily compensates the public for the actual (and anticipated) costs of remedial and response measures," and "the relative strength of the parties' litigation positions." Id. at 89-90. "The Court's task . . . is to determine whether the settlement represents a reasonable compromise, all the while bearing in mind the law's generally favorable disposition toward the voluntary settlement of litigation and CERCLA's specific preference of such resolution." Kramer, 19 F. Supp. 2d at 281 (quotation omitted).

"The 'consistency' required under CERCLA is one of fidelity to CERCLA's broad policies-it means only that the decree must further the larger purposes that Congress intended CERCLA to serve." United States v. Atlas Minerals and Chemicals, Inc., 851 F. Supp. 639, 655 (E.D. Pa. 1994). "Congress sought through CERCLA to encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties, and also aimed to encourage settlements that would reduce the inefficient expenditure of public funds on

lengthy litigation." In re Cuyahoga Equip. Corp., 980 F.2d 110, 119 (2d Cir. 1992) (citations omitted).

## IV. Whether the Consent Decree is Fair, Reasonable, and Consistent with CERCLA's Purposes

As the court remarked in New York v. Panex Indus., Inc., 2000 WL 743966, at *1 (W.D.N.Y. June 6, 2000), "[t]he standards for determining whether to approve a CERCLA consent decree are now well-established, even though application of those standards to the facts of a particular case has oftentimes vexed district courts in their analyses of prospective settlements." The proposed Consent Decree in this case is no exception to this norm.

### A. Fairness

#### 1. Procedural Fairness

Renaissance's Codefendants do not object to the Consent Decree as procedurally unfair. However, in determining overall fairness, when the settlement negotiations have taken place openly and all parties have been encouraged to join in such discussions and attempts have been made to enter global settlements, the Court is more willing to look upon a proposed Consent Decree favorably, even when it has had misgivings as to the substantive fairness of the Consent Decree. See United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1089 (1st. Cir. 1994) (promoting idea "that one type of fairness serves to assure the other"). For example, in Panex Indus., Inc., 2000 WL 743966, at *3, the court faced as its "most troublesome issue" whether substantive fairness could be found "where the record [was] seriously lacking in factual data by which a precise measurement of relative culpability [might] be calculated." The court considered such lack of proof not to be fatal, since it could "infer substantive fairness through a 'finding of

procedural fairness together with other circumstantial indicia of fairness.'" Id. (quoting Charles George Trucking, Inc., 34 F.3d at 1089); see also United States v. Davis , 261 F.3d 1, 23 (1st Cir. 2001) ("A finding of procedural fairness may also be an acceptable proxy for substantive fairness, when other circumstantial indicia of fairness are present.").

According to the movants, the negotiations in this case were lengthy and were conducted in good faith at arm's length. While the Court does not question such representations, evidently none of the other potentially responsible parties (PRPs) were privy to the negotiations, or the preliminary economic damage assessment quantifying the natural resource damages to the Fairplains Well Field, one of the contaminated areas. Thus, although the Court has no basis for finding that the negotiations were procedurally unfair, the Court will not consider such procedural fairness as counterbalancing its concerns about the substantive fairness of the Consent Decree.

2. Substantive Fairness

The Trustee has preliminarily quantified the damages and natural resource damages associated with the use and non-use losses due to the contamination of the Fairplains Well Field, one of the areas allegedly contaminated by Defendants at between $15.5 million to $17.7 million. Because there is no evidence of record, that the Trustee's assessment of damages was performed in accordance with the pertinent federal regulations, the Court does not presume the validity or correctness of this assessment. Utah v. Kennecott Corp., 801 F. Supp. 553, 567-68 & nn.15-16 (D. Utah 1992); 42 U.S.C. § 9607(f)(2)(C); 43 C.F.R. § 11.10 ("The assessment procedures set forth in this part are not mandatory. However, they must be used by Federal or State natural resource trustees in order to obtain the rebuttable presumption contained in section 107(f)(2)(C)

of CERCLA.").

The $180,000 that Renaissance would pay would compensate the Trustee for only about 1% of the damages to the Fairplains Well Field. Because the Trustee seeks compensation for natural resource damages to areas in addition to the Fairplains Well Field, including the Kingshill Aquifer, wetlands, mud flats, mangroves and the near shore Caribbean Sea, the $180,000 represents even less than 1% of the total compensation sought. Without further quantifying of the total damages and natural resources damages, the Court has no means of assessing whether Renaissance's payment of only $180,000 is substantively fair.

The Court is at a complete loss as to where to begin in its determination of whether the $120,000 allotted in the Consent Decree for response costs, oversight costs, health assessment costs, attorney's fees and litigation costs is substantively fair. Although the Trustee presents a natural resources damages figure for at least a portion of the natural resources that were harmed, DPNR has not provided the Court with any estimations of the past or projected response costs.

What complicates the Court's task even further is that the movants have suggested no apportionment methodology or presented even any imprecise estimates of the comparative fault of the various parties or groups of parties. The movants merely contend that Renaissance's apportionment is minimal because Renaissance came into possession of the Alumina Facility after the majority of the conduct occurred that caused the contamination, Renaissance has cooperated with DPNR and already paid $55,000 for investigation costs, oversight and response costs, and Renaissance has a limited ability to pay.

Renaissance acknowledges that as a current owner of the Alumina Facility it is liable for response costs. See 42 U.S.C. § 9607(a). That Renaissance's activities may not have caused

any portion of the contamination is just one relevant consideration in reaching an equitable apportionment. "[A]llocation is a highly fact-intensive process that depends upon the particular circumstances of each case." United States v. Davis, 31 F. Supp.2d 45, 63 (D.R.I. 1998).

Another factor pertinent to the inquiry is whether Renaissance obtained the Alumina Facility at a discounted price to allow for future environmental clean-up claims. See Smith Land & Imp. Corp. v. Celotex Corp., 851 F.2d 86, 90 (3d Cir. 1988); see also Equitable Considerations in Allocating Response Costs to Owners or Occupant of Previously Contaminated Facility in Action Pursuant to § 133(f) of Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 148 A.L.R. Fed 203 (discussing additional factors in apportioning liability). Moreover, since the commencement of Renaissance's ownership, red mud spills have occurred and contaminants have allegedly continued to leach into the ground water. These circumstances increase Renaissance's measure of liability.

Renaissance's cooperation with DPNR and contributions thus far are laudable. However, without an estimation of the total response costs, the Court cannot evaluate whether the $55,000 Renaissance has paid fairly limits Renaissance's additional liability to only $120,000.

Renaissance's purported limited ability to pay is not a compelling reason to reduce its apportionment. As SCA/ALCOA point out, Renaissance has not presented any data that would substantiate its argument that it has insufficient financial resources to pay its fair share, whatever that may be. Moreover, "[a]lthough ability to pay is one of the factors to be considered in equitably allocating CERCLA liability among contribution defendants, a defendant's share of liability is not increased or decreased simply because that defendant's net worth is more or less than the net worth of other defendants." United States v. Davis, 31 F. Supp.2d 45, 66 (D.R.I.

1998), aff'd 261 F.3d 1 (1st Cir. 2001). "As is true of any assessment of compensatory damages, the liable party's ability to pay should not influence the amount of the assessment." Charles George Trucking, Inc., 34 F.3d 1081 at 1087.

Thus, the movants have provided the Court with neither a calculated apportionment of liability, nor any other substantive qualitative methodology, that it used in determining the amount that Renaissance would pay in exchange for its discharge from liability. With the record before it, the Court cannot perform its role of assessing whether the proposed Consent Decree is based on a rational determination of comparative fault. Because the Court can find the Consent Decree neither substantively fair (nor substantively unfair), it cannot approve it.

B. Reasonableness

Pending before the Court are motions to dismiss in the Trustee's natural resource damages action. Presently, there has been no motion practice in DPNR's suit for response costs. However, the Court presumes that if it withholds approval of the Consent Decree, dispositive motions will likely ensue.

If the Court does not approve the proposed Consent Decree, there is a risk that the $300,000 Renaissance has agreed to pay will never be recovered by the Trustee and DPNR. In comparison to the estimate of the damages to the Fairplains Well Field alone at $15.5 to $17.7 million, Renaissance's contribution is not substantial enough to force the Court's hand.

Furthermore, the Court is not convinced that entering the Consent Decree will significantly reduce any litigation costs beyond what Renaissance would have paid its attorneys. Approval of the Consent Decree would not remove any issues raised in the pending motions from the Court's consideration. Even with Renaissance's dismissal from the case, discovery and

further motion practice are inevitable. Ultimately, if the remaining parties were not to settle, the matter would still have to be tried. The Court also anticipates contribution litigation as well among the remaining PRPs, as well as litigation regarding any indemnification or hold harmless agreements.

In New York v. SCA Services, Inc., 1993 WL 59407, at *5 (S.D.N.Y Mar. 1, 1993) the court rejected the proposed Consent Decree in part because no significant reduction in litigation costs would be realized:

> Since entry of the proposed Consent Judgment will not eliminate the need to apportion responsibility among all parties to the litigation with respect to the remedial costs and response costs not covered by the settlement, the litigation will continue unabated with attorneys fees mounting monthly as the parties or their attorneys, depending on who is in control of the situation, endeavor to show their share or responsibility as less than others maintain. . . . Thus, no significant reduction in the inefficient expenditures of funds in lengthy litigation would be obtained by approval of the proposed Consent Judgment.

As in SCA Services, Inc., the entering of the proposed Consent Decree will not eliminate the need to apportion responsibility among the parties, which, no doubt, will be a highly litigious process. Approval of this Consent Decree, involving the Trustee, DPNR, and only one PRP will due little to reduce litigation costs or to expedite resolution of theses matters.

C. Fidelity to CERCLA

One of CERCLA's goals is to encourage early settlement, with a focus on cleaning up the environment. The $300,000 that Renaissance will contribute will do little to meet this objective, given the substantial estimated natural resource damages alone, not to mention the response costs. Moreover, the bulk of the $300,000 is slated for natural resource damages compensation, which will not lead to any responsive or remedial action. See SCA Services, Inc., 1993 WL

59407, at *5 (rejecting Consent Decree because payment merely constituted assessment of a monetary amount sufficient to account for damage, and would not result in effective response). Thus, approving the Consent Decree will not further this CERCLA objective.

Another CERCLA policy is to encourage voluntary cleanups. By barring further claims for contribution against Renaissance for costs voluntarily incurred by a private party, the Consent Decree deters private parties from undertaking any cleanup "for fear of being 'stuck' with the full bill." Kelley v. Wagner, 930 F. Supp. 293, 299 (E.D. Mich. 1996). Thus, entering the Consent Decree before determining the response costs and an appropriate apportionment of liability actually counters CERCLA's intent.

The parties focus on whether the release of a subsequent transferee from liability is consistent with CERCLA's aims. However, the questions of whether such a discharge comports with CERCLA, is within the Court's jurisdictional power, and is precedented, have not been fully explored by the parties. Because the Court rejects the Consent Decree on other grounds, it does not reach the issues surrounding the discharge of subsequent transferees.

## V. Conclusion

"[T]he proper way to gauge the adequacy of settlement amounts to be paid by settling PRPs is to compare the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then to factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified." Charles George Trucking, Inc., 34 F.3d at 1087. The Court has before it neither the total natural resource damages assessment nor the total project costs. The movants have made no attempts to apportion liability. Neither the litigation risks nor time savings outweigh the concerns for substantive

fairness. No other considerations, including the desirability of re-developing the Alumina Facility, justify approving this proposed Consent Decree. The proponents have failed to meet their burden of producing evidence which enables the court to determine independently whether the proposed Consent Decree is fair, reasonable, and consistent with the goals of CERCLA.

ENTER:

DATE: October 22, 2008

____________/s/________________
RAYMOND L. FINCH
SENIOR DISTRICT JUDGE