```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                       DIVISION OF ST. CROIX

UNITED STATES VIRGIN ISLANDS      :    CIVIL ACTION
DEPARTMENT OF PLANNING            :
AND NATURAL RESOURCES             :
                                  :
         v.                       :
                                  :
ST. CROIX RENAISSANCE GROUP,      :
LLLP, et al.                      :    NO. 07-114
```

MEMORANDUM

Bartle, C.J.                                        February 3, 2011

The plaintiff United States Virgin Islands Department of Planning and Natural Resources has sued defendants for past and future response costs under Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. Plaintiff seeks to recover costs for releases or threatened releases of hazardous substances from the former alumina refinery in Kingshill, St. Croix, in the United States Virgin Islands, as well as to obtain a declaration of defendants' liability. Now before the court is the motion of defendant Century Alumina Company ("Century") for summary judgment on the ground that it is not a potentially responsible party within the meaning of CERCLA, 42 U.S.C. §§ 9601 et seq.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  At this stage, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

The following facts are undisputed.  Defendant Virgin Islands Alumina Corporation ("Vialco") purchased the alumina refinery property in issue in approximately May 1989 and operated it from that time until January 1995, when it ceased the processing of alumina.  On April 25, 1995, Century Chartering Co., Inc. acquired either all or a majority of the shares of the stock of Vialco from Vialco's then parent corporation Vialco Holdings, Ltd.[1]  On April 26, 1995, Century Chartering Co., Inc. sold its Vialco stock to Ravenswood Aluminum Corporation.[2]  Century Chartering Co., Inc. changed its name to Century Alumina Company on July 5, 1995.

---

1. Century Chartering Co., Inc. acquired 1,000 shares of the stock of Vialco.  It is unclear from the record whether this constitutes all of the shares of Vialco stock.  It is undisputed that it constitutes at least a majority of the Vialco stock, which gave Century Chartering Co., Inc. a controlling interest in Vialco.

2. Based on the record, it appears that Century and Vialco were subsidiaries of Glencore International AG, and Ravenswood Aluminum Corporation was a subsidiary of Century.  In 1995, Glencore International AG sold its stake in Century through a public offering.

Vialco sold the alumina refinery property to St. Croix Alumina on July 24, 1995 for $60 million.  From the proceeds of that sale, $42 million went to repay debts under a revolving credit facility, $11 million were used to pay a portion of amounts due to affiliates, and Vialco retained $7 million for general corporate purposes.

CERCLA imposes liability for releases on the current owner or operator of a facility, the owner or operator of the facility at the time the release was made, any person who arranged for disposal or treatment of the hazardous materials at the site, and any transporter or person who arranged for transport of the hazardous materials to the location in issue.  See 42 U.S.C. § 9607(a).  A parent corporation will also be held derivatively liable under CERCLA as an owner of a facility belonging to its subsidiary if the parent corporation controlled the actions of the subsidiary so that the subsidiary was used as a mere agency or instrumentality of the parent.  See United States v. Bestfoods, 524 U.S. 51, 63 (1998).  In addition, a parent corporation will be deemed an operator of a facility if it actually exercised control over or was otherwise intimately involved in the operations of the facility.  See id. at 68.

It is undisputed that Century never itself owned or operated the alumina refinery property, never arranged for the disposal or treatment of the hazardous materials allegedly released, and never transported or arranged for the transportation of the hazardous materials either during the one

day it owned Vialco stock or at any other time.  Instead, plaintiff argues the court should pierce the corporate veil and hold Century derivatively responsible for Vialco's conduct.

Generally, a parent corporation is not liable for the acts of its subsidiaries.  See Bestfoods, 524 U.S. at 61.  However, the corporate veil may be pierced and the parent corporation held liable for the acts of its subsidiary under CERCLA when the corporate form would otherwise be misused to accomplish certain wrongful acts on the parent's behalf.  See id. at 63.  In the interest of uniformity in the federal enforcement of CERCLA, our Court of Appeals has held that we must apply a federal common law standard for piercing the corporate veil.  See Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1225 (3d Cir. 1993).  In order to pierce the corporate veil, plaintiff must show by clear and convincing evidence that the subsidiary corporation is "little more than a legal fiction." Pearson v. Component Tech. Corp., 247 F.3d 471, 485 (3d Cir. 2001). We must consider the following factors:  gross undercapitalization, failure to observe corporate formalities, nonpayment of  dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.  See id. at 484-85.

Plaintiff contends that these factors clearly and convincingly weigh in favor of piercing Century's corporate veil. It maintains that Century knew in August 1995 that substantial petroleum contamination existed on the alumina refinery property, that Century was aware of pending litigation against Vialco arising from alleged injuries caused by a release of hazardous materials from the alumina refinery property during a hurricane, that Century and Vialco shared two corporate officers during the relevant time period, and that Century purposefully undercapitalized Vialco in the wake of the alumina refinery property sale in order to evade these environmental liabilities.

Plaintiff has come forward with no evidence to justify piercing the corporate veil of Century which was the majority owner of Vialco's stock for a only single day, and then over ten years before the instant lawsuit was filed.  Century's knowledge in August 1995 of the existing environmental problems and pending lawsuit is irrelevant since Century had already sold its shares of Vialco nearly four months before to Ravenswood Alumina Corporation, an affiliated company.  There is nothing in the record to establish that Vialco was undercapitalized by Century during the one day that Century was its majority stockholder. Moreover, plaintiff has presented no evidence to suggest that, even if Century were responsible for any undercapitalization of Vialco, there was any reason to believe that the $7 million remaining after Vialco was sold to St. Croix Alumina would be insufficient to meet Vialco's obligations under CERCLA.  Finally,

the mere commonality of two corporate officers between Century and Vialco does not give rise to parent corporation liability. See Bestfoods, 524 U.S. at 68-70.

Plaintiff has failed to come forward with evidence sufficient to create a genuine issue of material fact as to Century's liability as a parent corporation for Vialco's actions. Accordingly, we will grant Century's motion for summary judgment.