IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES VIRGIN ISLANDS | : | CIVIL ACTION |
| DEPARTMENT OF PLANNING | : | |
| AND NATURAL RESOURCES | : | |
| | : | |
| v. | : | |
| | : | |
| ST. CROIX RENAISSANCE GROUP, | : | |
| LLLP, et al. | : | NO. 07-114 |

MEMORANDUM

Bartle, C.J.                                        March 4, 2011

   The plaintiff United States Virgin Islands Department
of Planning and Natural Resources ("DPNR") has sued defendants
for past and future response costs under the Comprehensive
Environmental Response, Compensation, and Liability Act
("CERCLA"), 42 U.S.C. §§ 9601-9675.  DPNR seeks to recover costs
for releases or threatened releases of hazardous substances from
the former alumina refinery in Kingshill, St. Croix, in the
United States Virgin Islands, as well as to obtain a declaration
of defendants' liability.  Now before the court are the motions
of defendants St. Croix Renaissance Group ("SCRG"), Lockheed
Martin Corporation, Virgin Islands Aluminum Company ("Vialco"),
Alcoa World Alumina ("AWA"), and St. Croix Alumina ("SCA") for
summary judgment on the ground that DPNR has not alleged any
response costs recoverable under CERCLA.

   Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  At this stage, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

The following facts are undisputed.  In 1969, the Harvey Alumina Company built an alumina refinery on a parcel of industrial land in Kingshill, St. Croix.  The alumina refinery property has since passed through the hands of a number of owners and operators.  Lockheed Martin, Vialco, and SCA are all former owners and operators of the alumina refinery or are successors in interest.  AWA is the parent corporation of SCA.  SCRG purchased the alumina refinery property in 2002 and is its current owner, although the refinery permanently ceased operations prior to SCRG's purchase.  SCRG has since dismantled the refinery.

On May 7, 2004, DPNR retained the Law Offices of John K. Dema, P.C. ("counsel").  In the Professional Services Contract with the Government of the Virgin Islands, counsel agreed:

> to assist the Government in litigation by
> providing it with expert and specialized
> legal representation in connection with any
> and all of its claims for penalties and
> damages recoverable under law for harm to any

-2-

>
> and all protected interests arising from
> contamination by third parties of the natural
> resources near and located in [the alumina
> refinery property].

The Professional Services Contract further stated that counsel would provide legal advice regarding any claims that the Government might have arising from contamination by third parties of the natural resources of South-Central St. Croix and serve as co-counsel to the Virgin Islands Department of Justice.  The Government is to pay counsel a contingent fee calculated as a percentage of any recovery or settlement monies resulting from such litigation.  If there is no recovery, counsel will not receive a fee.  Counsel is obligated to advance expenses and costs related to the litigation.  These costs are to be paid to counsel from the proceeds of any recovery.  If no recovery occurs, the Government agrees to reimburse those disbursements "within sixty (60) days of a Stipulated Settlement or Final Judgment terminating the litigation subject to the availability and appropriation of funds.  Costs remaining unreimbursed after such period shall bear interest at the legal rate of interest then effective in the Territory."

CERCLA imposes liability for releases on the current owner or operator of a facility, the owner or operator of the facility at the time the release was made, any person who arranged for disposal or treatment of the hazardous materials at the site, and any transporter or person who arranged for transport of the hazardous materials to the location in issue.

-3-

See 42 U.S.C. § 9607(a).  It authorizes a state to recover both the response costs it has incurred in responding to a release of hazardous materials as well as damages for the harm to the state's natural resources.[1]  See 42 U.S.C. §§ 9606-07.  Under CERCLA, the Virgin Islands is considered a "state."  See 42 U.S.C. § 9601(27).  In order to prove its claim for the recovery of response costs, DPNR must prove that:  (1) the alumina refinery property is a facility within the meaning of CERCLA; (2) there has been a release or threatened release of a hazardous substance from the alumina refinery property; (3) the release or threatened release has required the DPNR to incur response costs; and (4) the defendant is a potentially responsible party under CERCLA.  See 42 U.S.C. § 9607(a)(A); see also U.S. v. CDMG Realty Co., 96 F.3d 706, 712 (3d Cir. 1996).

For the purposes of this motion, defendants do not contest the first, second, and fourth elements of this claim. However, defendants maintain that DPNR has not incurred any recoverable response costs.  Defendants contend that all response costs DPNR has requested have not been "incurred" and that any incurred costs are not recoverable because they are inconsistent with the National Contingency Plan.  CERCLA provides that any responsible party "shall be liable for all costs of removal or

---

1.  The Commissioner of the Department of Planning and Natural Resources for the U.S. Virgin Islands has also brought an action against these defendants for natural resource damages under CERCLA.  See Comm'r of Dep't of Planning and Natural Res. v. Century Alumina Co., D.V.I. 05-62.

remedial action incurred by the United States Government or a State or Indian tribe not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(A).

DPNR submits that it has incurred three items of recoverable response costs. First, it identifies $4,790.36 it paid directly to S.S. Papadopulos & Associates on September 20, 2010 for water sampling and laboratory fees of water samples collected from the alumina refinery property. Second, it points to the salaries of its employees who purportedly devoted over four thousand hours responding to contamination on the alumina refinery property. Third, DPNR asserts that the $61,519.67 advanced by counsel for sampling, laboratory analysis, and site visits paid for by counsel should be considered as incurred response costs. DPNR further contends that all of these costs are not inconsistent with the National Contingency Plan. See 42 U.S.C. § 9607(a)(A).

As an initial matter, the $4,790.36 paid directly by DPNR to S.S. Papadopulos & Associates cannot be considered here. In our view, a plaintiff may only recover such "costs of removal or remedial action" which were incurred before a lawsuit was initiated. See § 9607(a)(A); see also Trimble v. Asarco, 232 F.3d 946, 956-58 (8th Cir. 2000). DPNR filed its original complaint on October 18, 2007. It is undisputed that this work was not done, and therefore these costs were not incurred, until years later, in the spring of 2010. Even if the work need not have taken place before this action was commenced, it was not

-5-

disclosed to defendants until after the discovery deadline and thus after any opportunity for follow-up.  Pursuant to the court's February 9, 2010 Scheduling Order, all fact discovery in this case, now over three years old, was to be completed by July 30, 2010.  The work giving rise to these costs, as noted, occurred in the spring of 2010.  DPNR concedes that payment was not remitted to S.S. Papadopulos & Associates until September 20, 2010, nearly two months after the close of fact discovery. Finally, DPNR withheld the disclosure of this work and the payment for it until November 14, 2010, which was almost two months later and only a day before defendants' summary judgment motions were due.  For all these reasons, the $4,790.36 paid to S.S. Papadopulos & Associates cannot be deemed proper response costs.

We next turn to DPNR's contention that the time spent by its employees responding to contamination at the alumina refinery property qualifies as an incurred response cost.  As explained above, it maintains that its staff spent over four thousand hours responding to this contamination.  Counsel determined this number by conducting interviews with DPNR staff members during its preparation for this litigation.  While DPNR has not sought these costs as damages in this litigation, it asserts that they are incurred response costs for the purpose of establishing the liability of defendants and obtaining a declaration of future liability.

-6-

CERCLA requires an "accurate accounting" of DPNR's costs.  See 40 C.F.R. § 300.160(a)(1).  Payroll or other similar labor costs must be accounted for through contemporaneous time records to qualify as sufficiently accurate.  See U.S. v. Chapman, 146 F.3d 1166, 1171 (9th Cir. 1998); City of Wichita v. Trs. of the APCO Oil Corp. Liquidating Trust, 306 F. Supp. 2d 1040, 1096 (D. Kan. 2003); California ex rel. Calif. Dep't of Toxic Servs. v. Neville Chem. Co., 213 F. Supp. 2d 1134, 1138-40 (C.D. Cal. 2002).  Assuming that costs for salaried employees' time would indeed be recoverable, these costs are not incurred and thus not recoverable here since they have not been subject to an accurate accounting.  DPNR concedes that "because DPNR personnel did not maintain daily contemporaneous time sheets, DPNR cannot account for such time with precision."  In fact, such time records are so imprecise that DPNR has not pursued the recovery of these costs as damages.  DPNR's after-the-fact attempt to piece together records based on years' old recollections is insufficient to allow for recovery under CERCLA or satisfy CERCLA's requirement that a plaintiff has incurred costs.

Finally, DPNR argues that the $61,519.67 paid by its counsel to the engineering consultant RSG for sampling, laboratory analyses, and site visits have been incurred by DPNR because DPNR is legally obligated to reimburse counsel for these advanced costs under the terms of their Professional Services Contract.

CERCLA, as noted above, permits the United States or any State, or in this case the United States Virgin Islands, to recover "all costs of removal or remedial action *incurred*." 42 U.S.C. § 9607(a)(A) (emphasis added). Defendants contend that DPNR has no legal obligation under the Government's Professional Services Contract with counsel to reimburse him because the Virgin Islands Legislature has not yet made any appropriation for this purpose. DPNR counters that the contract imposes a sufficiently certain legal obligation to reimburse counsel to qualify as the incurrence of the response costs. According to DPNR, the Government has agreed to pay although not at any specific time and the accrual of interest for failure to pay "within sixty days" confirms that the Government has an unconditional obligation to pay.

A plaintiff is not required to have made payment in order to incur a response cost so long as it has "become liable for or subject to" such payment. Quarles Petroleum Co. v. U.S., 551 F.2d 1201, 1205 (Ct. Cl. 1977). The Professional Services Contract between the Government and counsel provides that:

> Payment shall be made out of said recovery or settlement monies at the termination of all involved litigation, inclusive of appeals, if any. It is understood and agreed that the Government will not be responsible for the payment of any attorneys' fees or other fee compensation if there is no recovery or settlement in this matter except to the extent specified in Paragraph 18.[2] However,

---

2. Paragraph 18 relates to termination of the contract by the
(continued...)

-8-

> at the conclusion of this case, the
> Government agrees to pay any expenses
> advanced by [counsel] and not previously
> paid, even though it may recover nothing,
> within sixty (60) days of a Stipulated
> Settlement or Final Judgment terminating the
> litigation subject to the availability and
> appropriation of funds.  Costs remaining
> unreimbursed after such period shall bear
> interest at the legal rate of interest then
> effective in the Territory.

(emphasis added).  The provision that costs will be paid from any

recovery is clearly a contingency.  Further, it is undisputed

that neither at the time the contract with counsel was signed nor

at any time up to this date has the Virgin Islands Legislature

appropriated any funds to pay counsel's costs in case there is no

recovery.  DPNR is under no legal obligation to reimburse counsel

unless and until such funds are appropriated.  Our Court of

Appeals has not had occasion to pass upon the question whether an

attorney's advancement of costs to a plaintiff with a condition

or contingency attached to the contractual obligation of

repayment is sufficiently certain as to qualify as a cost

incurred.

        The Court of Appeals for the Eighth Circuit resolved a

similar issue in Trimble v. Asarco, 232 F.3d 946, 956-58 (8th

Cir. 2000).  There, plaintiffs' attorneys had advanced to

plaintiffs all response costs as part of a contingent fee

agreement.  Plaintiffs were only obligated to reimburse their

attorneys for those costs if they prevailed on their CERCLA

---

2.(...continued)
Government.

-9-

claim.  See id.  The court reasoned that CERCLA "permits an
action for response costs 'incurred' - not 'to be incurred,'"
and, therefore, no obligation of payment for the response costs
existed at the time of the filing of the lawsuit or had been
incurred up until the motions for summary judgment were filed.
Id. at 958.  The court explained that response cost expenses
advanced by plaintiffs' attorneys were "insufficient as a matter
of law to satisfy the response costs element of their CERCLA
claim" because plaintiffs were only obligated to pay the
attorneys if their claim was successful and as a legal matter had
not yet *incurred* those expenses.  Id. at 956.  Similarly, in
Gussack Realty Co. v. Xerox Corp., the Court of Appeals for the
Second Circuit reversed a district court's lump sum award to a
plaintiff for the costs of a future site clean-up because the
parties had stipulated that the plaintiff had not yet incurred
any expenses compensable under CERCLA.  See 224 F.3d 85, 92 (2d
Cir. 2000). It explained that plaintiffs had not yet incurred
those costs and could not prevail on their claim for them.  See
id.

     While the contract does provide for the accrual of
interest if the expenses advanced by counsel are not repaid
within sixty days of a settlement or final judgment, this
provision does not create a legal obligation on the government to
pay for these costs.  The accrual of interest may act as an
incentive to the Legislature to appropriate funds in the future
and sooner rather than later, but it is not a command that it do

so.  We agree with the court in _Trimble_ that the inherent
contingency of DPNR's obligation to repay counsel's advanced
expenses prevents DPNR from relying on those costs to satisfy the
"response costs incurred" prong of CERCLA.  42 U.S.C.
§ 9607(a)(A).  As such, we find that DPNR has not yet incurred
any response costs.

In addition to its claim for recovery of past response
costs, DPNR also seeks a declaratory judgment of defendants'
liability to pay for future response costs.  CERCLA provides that
"in any action described in this subsection [on actions for
recovery of costs], the court shall enter a declaratory judgment
on liability for response costs or damages that will be binding
on any subsequent action or actions to recover further response
costs or damages."  42 U.S.C. § 9613(g)(2).

The question we must now resolve is whether DPNR may
nonetheless prevail on its claim for a declaration of the
liability of defendants for future response costs when it has not
yet incurred any response costs.  The _Trimble_ court reasoned
that, "a plaintiff cannot obtain declaratory relief pursuant to
§ 9613(g)(2) without having incurred response costs within the
meaning of [CERCLA]." 232 F.3d at 958.  The Courts of Appeals
for the Second and Ninth Circuits have reached the same
conclusion.  See _City of Colton v. American Promotional Events_,
614 F.3d 998, 1006-08 (9th Cir. 2010); _Gussack Realty_, 224 F.3d
85, 92 (2d Cir. 2000); _In re Dant & Russell_, 951 F.2d 246, 249-50
(9th Cir. 1991).  As the court explained in _City of Colton_,

-11-

"CERCLA's purposes would be better served by encouraging a plaintiff to come to court only after demonstrating its commitment to comply with the [National Contingency Plan] and undertake a CERCLA-quality cleanup."  614 F.3d at 1008.

The First and Tenth Circuits have come to the opposite result.  They have decided that, while CERCLA does not explicitly provide for declaratory relief for future response costs, neither is such an interpretation precluded by the statute's language. See U.S. v. Davis, 261 F.3d 1, 46 (1st Cir. 2001); County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1513 (10th Cir. 1991).  These courts have determined that the flexible time line and broad remedial purposes of CERCLA anticipate that such actions for declaratory judgment may properly be brought prior to the incurrence of any recoverable response costs.

Having studied the language of § 9613(g)(2) and considered the purposes of CERCLA generally, we agree with the courts in Trimble, City of Colton and Gussack Realty that the inability to recover damages for past response costs precludes a plaintiff from obtaining a declaratory judgment as to liability for future response costs.  CERCLA provides for recovery of "costs incurred" in an initial action and then provides that a court shall enter a declaratory judgment on "liability for response costs" that "will be binding on any subsequent action or actions to recover further response costs or damages."  (emphasis added).  42 U.S.C. § 9613(g)(2); see also 42 U.S.C. § 9607(a)(A). If a plaintiff need not have first incurred response costs in

-12-

order to bring an action for a declaratory judgment, it would render meaningless the statute's use of the phrase "<u>further</u> response costs." Moreover, requiring a plaintiff to prove the incurrence of past response costs before issuing a declaration of future liability provides an incentive to engage in prompt and quality clean-ups, rather than allowing hazardous substances to languish untreated in the environment while any legal action proceeds. Under the statutory scheme, therefore, initial response costs must be incurred before a declaration can be obtained in a subsequent action or proceeding.

DPNR has come forward with no evidence of having incurred any recoverable response costs under CERCLA. Thus, it cannot succeed on its claim for damages under 42 U.S.C. § 9607(a)(A) or for declaratory relief under 42 U.S.C. § 9613(g)(2). Accordingly, we will grant summary judgment in favor of defendants and against DPNR on all counts of the amended complaint.