IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

UNITED STATES VIRGIN ISLANDS :  CIVIL ACTION
DEPARTMENT OF PLANNING   :
AND NATURAL RESOURCES   :
            :
    v.      :
            :
ST. CROIX RENAISSANCE GROUP, :
LLLP, et al.       :  NO. 07-114

MEMORANDUM

Bartle, J.            October 16, 2013

   The plaintiff United States Virgin Islands Department
of Planning and Natural Resources ("DPNR") has sued defendants
for past and future response costs under the Comprehensive
Environmental Response, Compensation, and Liability Act
("CERCLA"), 42 U.S.C. §§ 9601-9675.  DPNR seeks to recover all
costs of response for releases or threatened releases of
hazardous substances from the former alumina refinery in
Kingshill, St. Croix, in the United States Virgin Islands, as
well as to obtain a judicial declaration pursuant to the
Declaratory Judgment Act, 28 U.S.C. § 2201, and CERCLA, 42 U.S.C.
§ 9613(g)(2), that defendants are liable for all past and future
response costs incurred by plaintiff responding to the release of
hazardous substances from the alumina facility.

I.

   On March 4, 2011, this court granted the motions of St.
Croix Renaissance Group ("SCRG"), Lockheed Martin, Virgin Islands

Aluminum Company ("VIALCO"), Alcoa World Alumina ("AWA"), and St. Croix Alumina ("SCA") for summary judgment on the ground that none of the costs incurred by DPNR prior to the filing of the lawsuit qualified as "incurred response costs" recoverable under CERCLA.  U.S. Virgin Islands Dep't of Planning and Natural Res. v. St. Croix Renaissance Group, L.L.L.P., 2011 U.S. Dist. LEXIS 22739 (March 4, 2011).  Because we found that the costs sought by DPNR were not "incurred response costs," we did not reach the argument of the defendants that those costs were inconsistent with the National Contingency Plan ("NCP").  Nor did we reach plaintiff's cross-motion for summary judgment or the issue of joint and several liability.

While agreeing with us that two of the items of response costs claimed by DPNR were not incurred response costs, our Court of Appeals reversed and remanded as to the third. U.S. Virgin Islands Dep't of Planning and Natural Res. v. St. Croix Renaissance Group, L.L.L.P., 2013 U.S. App. LEXIS 11243 (June 5, 2013).  The court held that there was a genuine dispute of fact as to whether one item of costs, namely $61,519.57 advanced by DPNR's counsel for sampling, laboratory testing and site visits, was an "incurred response cost."  It noted that at least some of that amount was incurred prior to the start of the litigation.[1]

_____

1.  At the subsequent oral argument before this court on the cross-motions for summary judgment, counsel for both parties conceded that all of these costs were actually incurred <u>after</u> the
continue...

In order to prevail on its claim for the recovery of response costs, DPNR must prove that:  (1) the alumina refinery property is a facility within the meaning of CERCLA; (2) there has been a release or threatened release of a hazardous substance from the alumina refinery property; (3) the release or threatened release has required the DPNR to incur response costs; and (4) the defendant is a potentially responsible party under CERCLA. See 42 U.S.C. § 9607(a)(A); see also U.S. v. CDMG Realty Co., 96 F.3d 706, 712 (3d Cir. 1996).  Defendants do not dispute that (1), (2), and (4) have been satisfied.  We are faced solely with the following issues:  (1) whether any costs claimed by DPNR as response costs were incurred prior to the start of the litigation; (2) whether the costs claimed by DPNR as response costs were "incurred" for the purposes of CERCLA even though they were advanced by counsel for plaintiff pursuant to a Professional Services Contract ("PSC"); (3) whether the response costs claimed by DPNR must be consistent with the NCP; and (4) if the costs claimed by DPNR must be consistent with the NCP, whether they were indeed consistent.

Defendants first argue that any expenditures made by DPNR related to the release of toxic chemicals were made after the start of litigation.  Under CERCLA, at least some costs must be incurred prior to the start of litigation in order for a plaintiff to recover.  See United States v. Price, 577 F. Supp.

---

1....continue
initiation of suit.

1103, 1110 (D. N.J. 1983); see also Redland Soccer Club v. Dep't
of the Army, 55 F.3d 827, 850 (3d Cir. 1995).  While the
$61,519.57 concededly was incurred after suit was filed on
October 18, 2007, plaintiff points to at least $4,800 in other
costs advanced by counsel for plaintiff to S.S. Papadopulos &
Associates ("SSPA") for investigation and response costs incurred
between April 15 and September 1, 2007.

   Defendants next reiterate their argument that no costs
were incurred by DPNR for the purposes of CERCLA because, under
the PSC between DPNR and its counsel, DPNR was not obligated to
reimburse its counsel for costs advanced to various contractors.
The PSC provides:

> at the conclusion of this case, the
> Government agrees to pay any expenses
> advanced by Contractor and not previously
> paid, even though it may recover nothing,
> within sixty (60) days of a Stipulated
> Settlement or Final Judgment terminating the
> litigation subject to the availability and
> appropriation of funds.

Defendants contend that response costs may not be recovered when
there has been no commitment of resources for meeting those
costs, citing Trimble v. Asarco, Inc., 232 F.3d 946, 964-65 (8th
Cir. 2000), and that because the payment of costs is contingent
upon the "appropriation of funds" by the Virgin Islands
Legislature, DPNR has not committed any resources to meet those
costs.

   With regard to this argument, our Court of Appeals held
that "there is at least a genuine issue as to the proper

-4-

interpretation of DPNR's obligation under the PSC" and that
"[d]rawing reasonable inferences in the light most favorable to
DPNR, a reasonable jury could conclude that DPNR was obligated to
reimburse the advanced costs." Dep't of Planning and Natural
Res., 2013 U.S. App. LEXIS 11243, *5.  The court based this
conclusion on the doctrine of last antecedent, which provides
that qualifying words or phrases "are to be applied to the words
or phrase immediately preceding and not to others more remote."
See United States v. Hodge, 321 F.3d 429, 436 (3d Cir. 2003).
Thus, according to our Court of Appeals, a jury could reasonably
conclude that the language "subject to the availability and
appropriation of funds" modifies only DPNR's 60-day time frame
for payment and not the payment itself.

     The court also stated, without further elaboration,
that defendants could overcome this interpretation with "other
indicia of meaning."  We must therefore decide whether defendants
have come forward with "other indicia of meaning" sufficient to
overcome the interpretation our Court of Appeals deemed
reasonable.  At the oral argument, defendants asserted that the
law of the Virgin Islands prohibits the interpretation of the PSC
advanced by DPNR.  Defendants maintain that the contract must be
given a reasonable, lawful interpretation, and that under Virgin
Islands law the government cannot obligate itself to pay for
services if the legislature has not appropriated funds for those
services.  Defendants cite Chiang v. Turnbull, 2000 WL 1141067

(Terr. V.I. June 20, 2000), and <u>Bryan v. Turnbull</u>, 2005 WL
1214243 (V.I. Super. Apr. 27, 2005).

Fatal to defendants' argument, however, is the fact
that the government of the Virgin Islands has appropriated funds
to reimburse DPNR's counsel for investigation and response costs.
The record contains the declaration of Vincent F. Frazer, the
Attorney General of the Virgin Islands.  In his declaration, Mr.
Frazer states that pursuant to Act No. 7206 of the Legislature of
the Virgin Islands, appropriations exist to reimburse counsel
costs, including costs advanced by counsel for professional
services, and that the government had the funds to begin
reimbursement of costs as of March 4, 2011.  Defendants have not
come forward with any evidence to rebut DPNR's assertion that the
government of the Virgin Islands properly appropriated funds to
fulfill its obligations under the PSC and that it has made
payments and will continue to do so.

Defendants further argue that the costs paid to DPNR's
consultants to visit the alumina facility, conduct sampling,
perform analyses, conduct investigations and prepare the RI/FS
report, are not consistent with the NCP and are thus not
recoverable.  Pursuant to CERCLA, a government plaintiff is
entitled to recover "all costs of removal or remedial action
incurred... not inconsistent with the national contingency plan."
42 U.S.C. § 9607(a)(4)(A).  The NCP, which is prescribed by
CERCLA, provides a long list of requirements which are designed
to ensure that cleanup measures are cost effective.  42 U.S.C.

-6-

§ 9605(7); 42 U.S.C. § 9605; 40 C.F.R. part 300 (2012).

Defendants have the burden to show that governmental response

costs are inconsistent with the NCP.  United States v. E.I.

DuPont de Nemours & Co., Inc., 432 F.3d 161, 178 (3d Cir. 2005).

       Plaintiff counters that compliance with the NCP is not

an element of the prima facie case the government must prove in

order to defeat summary judgment.  Plaintiff further maintains

that in a CERCLA case where the plaintiff is the government,

inconsistency with the NCP goes to the recoverability of costs

but not to the liability of the defendant.  As such, according to

plaintiff, a determination of whether costs are consistent with

the NCP is not a proper basis for granting summary judgment.

       As noted above, the onus is on the defendants to come

forth with evidence to show that governmental response costs are

inconsistent with the NCP.  In other words, a presumption exists

that any costs incurred by DPNR in connection with the release of

hazardous materials are consistent with the NCP.  Moreover, at

least one court has suggested that initial investigation and

monitoring costs are not amenable to evaluation under the NCP.

Artesian Water Co. v. New Castle County, 659 F. Supp. 1269, 1294

(D. Del. 1987), aff'd, 851 F.2d 643, 651 (3d Cir. 1988).   At

this juncture, the specific response costs on which plaintiff

relies are the $4,800 paid to SSPA, which, as explained above,

are the only costs DPNR has shown were incurred prior to the

start of the litigation.  Significantly, defendants have failed

to come forth with any evidence that the $4,800 in costs paid to

SSPA are inconsistent with the NCP.  Rather, defendants focus on
the sums paid to SSPA and Richardson & Associates, another
professional services firm, for the development of a draft RI/FS
report which, according to defendants, is inconsistent with the
NCP.  Since defendants have presented no evidence pertaining
specifically to the $4,800 in costs incurred prior to the
commencement of this litigation, we need not reach the question
of whether an analysis under the NCP is proper at this stage.

        We find that DPNR is entitled to a declaration that
defendants are liable for past and future response costs, not
inconsistent with the NCP, incurred by plaintiff while responding
to the release of hazardous substances from the alumina facility.
We do not reach the question of whether specific costs claimed by
DPNR are consistent with the NCP.  The issue of recoverability of
specific response costs must be determined at a later trial.

                                II.

        We turn to the issue of joint and several liability.
Defendants have moved for summary judgment on the issue of the
divisibility of harm caused by each.  Because the issue of
whether joint and several liability applies is a matter of law,
where no genuine disputes of material fact exist, divisibility of
harm may properly be addressed in a motion for summary judgment.
See, e.g., U.S. Bank Nat'l Ass'n v. U.S. EPA, 563 F.3d 199 (6th
Cir. 2009).

        In a CERCLA action, defendants bear the burden of
showing that joint and several liability is not warranted.

                               -8-

Burlington Northern and Santa Fe Ry. Co. v. United States, 556
U.S. 599, 614 (2009).   As the Court acknowledged in Burlington
Northern, "'[t]he universal starting point for divisibility of
harm analyses in CERCLA cases' is § 433A of the Restatement
(Second) of Torts," which provides that apportionment is proper
when "there is a reasonable basis for determining the
contribution of each cause to a single harm." Burlington
Northern, 556 U.S. at 614.   Our Court of Appeals has stated that
the burden on defendants is "substantial." United States v.
Alcan Aluminum Corp., 964 F.2d 252, 269 (3d Cir. 1992).
Defendants' burden may be met by showing that harm can be divided
among them based on volumetric, chronological, or geographic
considerations.   Burlington Northern, 556 U.S. at 617-18.

          Defendants argue that they have met their burden of
showing divisibility based on volumetric, chronological and
geographic considerations.   They point to the fact that each one
of them operated the alumina refinery for a distinct and separate
period of time and are able to quantify the volume of alumina
production attributable to each defendant.   Plaintiff counters
that CERCLA defendants rarely avoid joint and several liability
and that defendants' own experts admit that they are unable to
determine the amount of red mud production attributable to each
defendant by examining only the volume of alumina production.
Plaintiff also asserts that defendants' experts used unreasonable
assumptions when apportioning harm among the defendants and that
defendants ignored substances other than red mud that were

released on the alumina factory site.  Finally, plaintiff
contends that we should not apply apportionment to this case
based on principles of equity due to the purported impecunious
circumstances of defendant VIALCO.

As our Court of Appeals has acknowledged, the analysis
of divisibility of harm is "intensely factual."  <u>Alcan</u>, 964 F.2d
at 269.  Competing expert opinions may raise sufficient questions
of fact to preclude summary judgment on this issue.  <u>United
States v. Alcan Aluminum Corp.</u>, 990 F.2d 711, 722 (3d Cir. 1993).
Based on these considerations, we conclude that there is a
genuine dispute of material fact raised by plaintiff as to the
divisibility of harm among defendants to preclude summary
judgment on the issue of joint and several liability.

III.

For the reasons set forth above, the motions of
defendants Lockheed Martin Corporation and Virgin Islands Alumina
Company for summary judgment will be denied, the motion of
Lockheed Martin Corporation for partial summary judgment that if
plaintiff incurred response costs consistent with the NCP, those
response costs are divisible among the responsible parties will
be denied, and the motion of plaintiff for summary judgment
regarding liability under CERCLA will be granted as to the claim
for declaratory judgment for past and future response costs not
inconsistent with the NCP.